# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3656 | **DATE** | 2/22/2001 |
| **CASE TITLE** | Bogosian vs. Board of Education, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment on count X of his claim (45-1) is granted. Defendants' motion for summary judgment (48-1) is granted with respect to counts I and II, denied with respect to counts III through VIII and Count X, and granted in part with respect to count IX. Enter Memorandum Opinion and Order. Pretrial order is to be filed by 3/9/01; and response to any motions in limine by 3/21/01.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | **2** number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 23 2001 date docketed | 76 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | _____ deputy initials | |
| | Copy to judge/magistrate judge. | | 2/22/01 date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER BOGOSIAN, )
)
          Plaintiff, )
)
    v. )
)
BOARD OF EDUCATION OF COMMUNITY )
UNIT SCHOOL DISTRICT 200, DAVID S. )
FLEMING, ROBERT E. DAVIS, DONALD )    No. 99 C 3656
SHANER, ALAN BOLDS, DAWN EARL, )
ANDREW JOHNSON, MARIE C. SLATER, )
TIMOTHY NEUBERT, DR. MARY M. )
CURLEY, DENIE YOUNG, GAIL GOFF, )
CLARA GOULD, KATHERINE GREENMAN, )
and PATTY WOODS, )
)
          Defendants. )

DOCKETED
FEB 23 2001

## MEMORANDUM OPINION AND ORDER

Christopher Bogosian was fired in 1998 from his position as a first grade teacher at Wiesbrook Elementary School in Wheaton, Illinois, following an investigation of charges by other teachers that he had been touching and kissing female students in an inappropriate manner. After this, the Board of Education ("Board") of Community Unit School District 200 ("District")[1] issued a press release describing the charges against him and saying that "the

---

[1] The Board governs the schools in District 200. *See* 105 ILCS 5/10-1. At all times relevant to this case, defendants Fleming, Davis, Shaner, Bolds, Earl, Johnson and Slater were members of the Board. Defendant Curley was the acting superintendent for the Board, and defendants Young and Neubert were non-Board member employees of the District. Defendants Goff, Gould, Greenman and Woods were teachers at Wiesbrook Elementary School.

Board agreed that Mr. Bogosian's actions were inappropriate, unprofessional, and inconsistent with the District's philosophy of instruction in the primary grades." Mr. Bogosian brought a suit alleging due process violations, defamation, civil conspiracy, tortious interference with a contractual relationship, and violations of the Illinois Personnel Records Review Act, 820 ILCS 40/1 et seq. Mr. Bogosian moved for summary judgment on the Records Review Act, and the defendants brought a cross motion on all ten claims in Mr. Bogosian's complaint. Mr. Bogosian's motion for summary judgment is GRANTED, and the defendants' motion is granted in part and denied in part.

## I. Background

Mr. Bogosian was one of four first grade teachers at Wiesbrook Elementary School during the 1996-98 school years. The other three teachers, Clara Gould, Gail Goff, and Katherine Greenman (the "teachers"), had classrooms close to Mr. Bogosian's. In June of 1998, the teachers told the principal that, over the course of two school years, they had observed Mr. Bogosian touching female students in a manner that made the teachers uncomfortable. They said they had seen him hug, kiss, and pat female students, that he touched only girls, and that he focused on immature girls. Ms. Goff told the principal that she had seen Mr. Bogosian sitting on a swing with a female student straddling him on his lap. Ms. Greenman told the principal that she had seen Mr. Bogosian rubbing

one of her female student's chest and abdomen with his open hand. At the same meeting, the teachers also told the principal that Mr. Bogosian was "not a team player" and that the first grade teachers would "never be a team," presumably as long as he was there. In late June 1998, employees of the District interviewed the principal and the teachers; Mr. Bogosian's attorney and union representative were also present at the interviews. The teachers repeated many of the things they had told the president.[2] They also said that they thought his conduct was "unprofessional" and that he had a "need" to touch female students. Ms. Greenman also said that she once saw him sitting on a chair and had two female students on the inside of each thigh facing each other. Ms. Goff said that, on more than one occasion, she saw female students grabbing him around his thigh with arms and hands high on his thigh and in his crotch area, and that he didn't pull away.

On June 24, 1994, the District sent a letter to Mr. Bogosian notifying him that "charges of inappropriate conduct with female students" had been filed against him, and that the factual basis for the allegations would be provided at a meeting on June 30, 1998. The letter also informed him that he would be given the opportunity to explain or rebut the charges at that meeting. Mr. Bogosian appeared at the June 30 meeting, and denied or explained

---

[2] In their Answer to Mr. Bogosian's Second Amended Complaint, the defendants admit that the teachers made all of the statements alleged by Mr. Bogosian.

the allegations against him. He explained that his background was in early childhood development, which is a "child-centered" approach that focuses on the social, emotional and physical development of children, as well as their cognitive development, and encourages some physical contact with young students. Up until the time of the teachers' allegations, no student or parent had ever complained about Mr. Bogosian to the District.

On July 9, 1998, a District administrator and lawyer prepared a memorandum summarizing the interviews titled "Allegations of sexual harassment of students against Chris Bogosian" and delivered it to the Board. Mr. Bogosian continued to work during the summer school session at the Board's request. On August 5, 1998, the teacher's union told Mr. Bogosian (based on a communication from a Board attorney) that the Board would fire him if he did not voluntarily resign. The representative also told him that he would not be allowed to return to Wiesbrook for the fall 1998 school term. Mr. Bogosian stopped receiving paychecks as of August 5.

Late in August, Mr. Bogosian tendered his resignation, but he quickly "revoked" it. In August and early September, he attempted unsuccessfully to find an elementary teaching position at three area schools. Through his lawyer, he attempted to negotiate a settlement with the Board. The Board suggested that it might be able to offer a letter of recommendation if Mr. Bogosian signed a settlement agreement. Mr. Bogosian never signed a settlement

agreement, but he tendered his resignation to the Board on October 14, 1998. The Board accepted the resignation, but Mr. Bogosian again attempted to "revoke" it. On October 26, the Board issued a press release that identified the allegations against Mr. Bogosian as "involv[ing] kissing and hugging female students, rubbing the chests and stomachs of female students, pulling female students against his body and onto his lap, and generally showing favoritism toward female students." It also stated that "[a]t the conclusion of the investigation, the board agreed that Mr. Bogosian's actions were inappropriate, unprofessional and inconsistent with the District's philosophy of instruction in the primary grades." The release also indicated that it planned to seek Mr. Bogosian's dismissal at the board meeting on October 28, 1998. At the October 28 meeting, the Board voted against permitting Mr. Bogosian to withdraw his resignation. Mr. Bogosian filed this lawsuit in the DuPage County Circuit Court on November 23, 1998.

On February 1, 1999, the Board passed a resolution reinstating Mr. Bogosian as a certified teacher with full tenure rights, seniority, and back-pay in the amount of $9,423.20. Also on February 1, the Board issued a press release in which it said that it had reinstated Mr. Bogosian and had adopted a "confidential remediation plan, which . . . outlines specific conduct that Bogosian is to avoid as a teacher." Since his reinstatement, Mr. Bogosian has been employed at Bower Elementary School as a physical

education teacher. He turned down a classroom assignment as a third grade teacher for the 1999-2000 school year because he wanted an assignment teaching first grade.

## II. Standard of Review

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). I apply this standard with "added rigor in employment . . . cases, where intent and credibility are crucial issues." *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. Claims against the teachers

### A. Defamation

I deal first with the defamation claims against the teachers (counts V through VIII). To prove a claim of defamation under Illinois law, Mr. Bogosian must show that the teachers made false statements about him, that there was an unprivileged publication of the defamatory statement to a third party by the teachers, and that he was damaged. *See Cianci v. Pettibone Corp.*, 698 N.E.2d 674, 678 (Ill. App. Ct. 1998). The teachers may avoid liability for defamation if they can show that their statements were not false

-6-

assertions of fact; that is, if they were merely expressing an opinion, or if the statements were "substantially true." *Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 613-14 (7th Cir. 1996).

Although the plaintiff bears the burden of proving that a statement is false, once the plaintiff has come forward with evidence of falsity, the defendant bears the burden of establishing the "substantial truth" of the statements. *Gist v. Macon County Sheriff's Dept.*, 671 N.E.2d 1154, 1157 (Ill. App. Ct. 1996). A statement is "substantially true" if the "gist" or "sting" (that is, the heart of what makes it defamatory) is true, even if the non-defamatory parts are not "technically accurate in every detail." *See id.* Whether a statement is substantially true or false is a question for the jury, *id.*, but the distinction between fact and opinion is a matter of law. *Owen v. Carr*, 497 N.E.2d 1145, 1148 (Ill. 1986). To determine whether a statement is fact or opinion, I must look at the totality of the circumstances and consider whether the statement is capable of objective verification as true or false. *Doherty v. Kahn*, 682 N.E.2d 163, 172 (Ill. App. Ct. 1997). Mixed expressions of fact and opinion may be actionable if the facts are subject to verification. *Quality Granite Constr. Co., Inc. v. Hurst-Rosche Eng'rs, Inc.*, 632 N.E.2d 1139, 1143 (Ill. App. Ct. 1994).

The defendants argue that the teachers' statements were all either expressions of opinion or substantially true statements of

-7-

fact. The statements are overwhelmingly factual; they relate acts of Mr. Bogosian that the teachers observed. Only a few statements require closer evaluation. Ms. Gould said that Mr. Bogosian's behavior was "unprofessional." Standing alone, this could be construed as a statement of opinion, but the verifiable factual basis for the opinion is clear from the balance of Ms. Gould's statements, so the statement may be treated as a mixed statement of fact and opinion, which is actionable. *Doherty*, 682 N.E.2d at 172. Moreover, Mr. Bogosian has produced evidence from his training in early childhood development to show that his behavior was professionally appropriate. The jury may use this evidence to weigh the truth of the statement. Ms. Gould also said that Mr. Bogosian has a "need" to touch female students. Although this statement could conceivably be verified by some psychological evidence, neither party has produced any evidence to suggest that it is verifiable, so the statement is non-actionable opinion. Ms. Greenman said that his conduct "wasn't right;" this is also an opinion incapable of objective verification.

Defendants next argue that the statements of the teachers are substantially true, and that Mr. Bogosian has not created a material issue of fact as to their falsity. They argue that he has admitted that the "gist" of the teachers' statements are true because he has admitted that he communicated with children at eye level and occasionally hugged students. The defense of substantial

truth requires that the "gist" of the defamatory part of the statement be true, not the "gist" of the statement as a whole. It does not suffice, for example, to say that Ms. Greenman's statement that Mr. Bogosian "once sat on a chair and had two female students on the inside of each thigh facing each other" is substantially true because Mr. Bogosian admits that students attempted to climb into his lap, or even if he admitted that a student had sat on his lap. The defamatory "gist" of Ms. Greenman's statement is that two female students were sitting on the inside of his thighs, and that is not clearly admitted as true by Mr. Bogosian.

The defendants suggest that Mr. Bogosian's "self-serving and uncorroborated" affidavit is insufficient to create a material issue of fact. Although the Seventh Circuit has said that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment," *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999), that rule is limited to circumstances in which the party's affidavit is conclusory or conflicts with previous deposition testimony in the record. *See Darnell v. Target Stores*, 16 F.3d 174, 177 (7th Cir. 1994).[3] The defendants do not argue that Mr. Bogosian's affidavit conflicts with his deposition testimony; they argue only that the affidavit

---

[3] Indeed, this is the only logical reading of the Seventh Circuit's rule. A literal reading would suggest that a party's sworn testimony is evidence that should be given *no* weight at all. This cannot be the meaning intended. *Cf. Lotspeich v. Golden Oil Co.*, 961 P.2d 790, 793 (N.M. Ct. App. 1998).

and his deposition testimony are "self-serving and uncorroborated." The teachers describe actions by Mr. Bogosian, and he denies that the events happened as described or at all. The only evidence offered to prove the truth or falsity, by either side, is oral testimony of the witness's observations. To determine the truth of the allegations, a jury would have to consider the credibility of the witnesses and decide whom to believe. *See In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

Finally, the defendants argue that the teachers are not liable because there is a qualified privilege to make such statements, even if false. The existence of a qualified privilege is a question of law; I look to the type of interest involved and to the seriousness of the harm threatened to that interest, and I look also to the degree of harm to a person's reputation that might normally be necessary to protect that interest. *Kuwik v. Starmark Star Marketing & Admin., Inc.*, 619 N.E.2d 129, 133-34 (Ill. 1993). I agree that there is a privilege. The interest implicated by the teachers' communications is the protection of children from physical or sexual abuse. School teachers are "mandated reporters" of child abuse, which means they have a duty to report reasonable suspicions of abuse. 325 ILCS 5/4. As a matter of public policy, statements to the school principal about concerns of abuse are so important that a qualified privilege insulates the teachers from defamation liability so long as they do not abuse the privilege.

Whether the teachers have lost the qualified privilege by abusing it is a question of fact for the jury to resolve. *See Kuwik*, 619 N.E.2d at 134. The jury considers whether the teachers acted in good faith in making the statements, whether the statements were properly within the scope of the privilege, and whether the statements were communicated only to proper parties. *Id.* Mr. Bogosian raises an issue of material fact with respect to the good faith of the teachers: he claims that the teachers wanted to get rid of him because they did not like his teaching style and because he had proposed a controversial "looping" plan, in which first grade teachers would also teach some second grade classes. As evidence of this motive, he points out that, in the same meeting in which they made allegations of improper touching the teachers said that Mr. Bogosian was "not a team player" and that the first grade teachers "would never be a team," the inference being that Mr. Bogosian was the impediment. Mr. Bogosian also points to the fact that the teachers, although "mandated reporters" under state law, did not report what they saw to DCFS, and he argues that this raises an inference that they did not act out of a good faith concern for the safety of the children involved. Mr. Bogosian also suggests that the teachers were jealous of his popularity with his own students and with theirs. The teachers deny thinking that Mr. Bogosian was popular, but this merely demonstrates that there are material issues of fact that preclude summary judgment on the

-11-

defamation claims against the teachers.

B. Tortious interference with a contractual relationship

Mr. Bogosian also sues the teachers for tortious interference with a contractual relationship. To succeed, he must prove: (1) the existence of a valid and enforceable contract with the District; (2) the teachers' awareness of the contractual relationship; (3) that the teachers intentionally and unjustifiably caused the District to breach the contract; and (4) damages. *Turner v. Fletcher*, 706 N.E.2d 514, 519 (Ill. App. Ct. 1999). Illinois courts recognize a privilege (that is, the interference will be justifiable) where the defendant acts to protect an interest that the law deems to be of equal or greater value than the plaintiff's contractual rights. *Id.* The defendants argue that, even assuming Mr. Bogosian had a contract with the District of which the teachers were aware, the teachers were justified and the District did not breach its contract with him because he resigned. Mr. Bogosian has raised a material issue of disputed fact about the teachers' motivations with regard to the defamation qualified privilege, and the same facts are relevant to a determination of whether the teachers' interference was justified.[4]

_____

[4] The defendants argue that Mr. Bogosian must more than "merely assert" that the teachers' conduct was unjustified, citing several Illinois cases dismissing tortious interference claims for failure to state a claim. In federal court, the Federal Rules of Civil Procedure apply, and all the Rule 56 requires is that Mr. Bogosian demonstrate a genuine issue of material fact created by the "pleadings, depositions, answers to interrogatories, and

The defendants also argue that there could be no breach of contract or damages because Mr. Bogosian was not terminated, actually or constructively, but instead he resigned from his job. In Illinois, an employee is actually discharged when "the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee." *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 912 (Ill. 1988). The defendants admit that Mr. Bogosian was told not to show up for work in the fall and that his paychecks were stopped as of August 5, 1998. What could be more clear and unequivocal? I hold that, as a matter of law, Mr. Bogosian was discharged on August 5, and any subsequent resignations have no more effect than saying "Oh yeah, I quit" after being told "You're fired."

The defendants say that the Mr. Bogosian's reinstatement with back pay eliminates any damages, but he asks for punitive damages, which may be available for tortious interference where the defendants acted with malice. *See Johnson v. Lincoln Christian College*, 501 N.E.2d 1380, 1388-89 (Ill. App. Ct. 1986); *PCx Corp. v. Ross*, 568 N.E.2d 311, 317 (Ill. App. Ct. 1991). Since a material issue of fact exists with regard to the teachers' state of mind or motivation, summary judgment is not proper on count III.

## C. Civil Conspiracy

admissions on file, together with the affidavits, if any."

To prove a claim of civil conspiracy, Mr. Bogosian must show (1) an agreement between the teachers for the purpose of accomplishing some unlawful purpose (or some lawful purpose by unlawful means) and (2) at least one tortious act in furtherance of the conspiracy. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). Mr. Bogosian has raised disputed issues of material fact for the defamation claims and the tortious interference claim, so he has raised an issue of fact with regard to whether a tort was committed. As to the agreement, the defendants rely on the teachers' own statements in an attempt to show that Mr. Bogosian's inferences of an agreement do not raise a disputed fact. Civil conspiracies are "almost never susceptible to direct proof." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). Although mere allegations of a conspiracy are insufficient to withstand a motion for summary judgment, a "conspiracy may be proven by circumstantial evidence and should not be taken from the jury as long as there is a possibility that a jury can reasonably infer from the circumstances that the required elements of conspiracy have been met." *Chicago Miracle Temple Church, Inc. v. Fox*, 901 F. Supp. 1333, 1348 (N.D. Ill. 1995) (Castillo, J.). Both parties have submitted evidence of the teachers' conversations prior to their meeting with the principal, and Mr. Bogosian has submitted evidence that could support an inference of a motive or plan to have him fired. Although it is a close question whether a

jury could find that there was an agreement, I must draw all inferences in favor of Mr. Bogosian, so I conclude that he has raised an issue of material fact. The defendants' motion to dismiss is denied as to the claims against the teachers (counts III through VIII).

## IV. Claims against the Board

### A. Illinois Personnel Records Review Act

Mr. Bogosian moves for summary judgment on his claim under the Illinois Personnel Records Review Act (Count X), and the defendants bring a cross motion. None of the facts related to this claim are disputed: the Board issued two press releases about Mr. Bogosian's employment troubles with the District without first giving him written notice. The October 26, 1998 press release (read by acting Superintendent Mary Curley at a press conference on October 28) revealed that Mr. Bogosian had been under investigation, that he had been accused of "inappropriate" acts with children, and that the Board sought his resignation as a result of the investigation. The February 9, 1999 press release announced that he was reinstated subject to "a confidential remediation plan, which . . . outlines specific conduct that Bogosian is to avoid as a teacher."

The Illinois Personnel Record Review Act, 820 ILCS 40/1 et seq. (the "Act"), provides a private right of action for employees who are denied access to personnel records or whose records are divulged without written notice. Id. at §§ 2, 7, 12(c). Section

-15-

7 does not apply if "the employee has specifically waived written notice as part of a written, signed employment application with another employer." *Id.* at § 7(3)(a). No Illinois court has construed this § 7 of the Act, but I construe it according to its "plain and ordinary meaning." *Thomas v. Greer*, 573 N.E.2d 814, 816 (Ill. 1991). I must also look at the language in each section in light of the entire statute. *Henrich v. Libertyville High Sch.*, 712 N.E.2d 298, 302 (Ill. 1998).

Section 7(1) says that "[a]n employer . . . shall not divulge a disciplinary report, letter of reprimand, or other disciplinary action to a third party . . . without written notice." The defendants suggest that it applies only to written records and documents, but not to verbal statements because it does not specifically mention verbal statements; the legislature could have prohibited disclosure of "information contained within records" if that was what it meant. However, § 8 of the Act requires employers to "review a personnel record before releasing *information* to a third party"(emphasis added). The use of the word "information" in § 8 suggests that the legislature *did* intend to encompass the information contained within the records and not merely the written items. Furthermore, it would make nonsense of § 7(1) to allow employers to disclose the information contained in a disciplinary report or letter or reprimand without notice to the employee so long as they did it verbally, and I must avoid construction of a

-16-

statute that would render any part of it meaningless or void. *Hernon v. E.W. Corrigan Constr. Co.*, 595 N.E.2d 561, 562 (Ill. 1992). Finally, the legislature's inclusion of "other disciplinary actions" in § 7(1) indicates that it intended the scope of the Act's coverage to be broader than merely written reports and letters.

The defendants next argue that the Act requires notice only for formal "disciplinary actions" and not for statements about misconduct, investigations, contemplated discipline, or settlement negotiations. They argue that no "action" was taken against Mr. Bogosian because he resigned before he could be dismissed. As a matter of law, that is not true (he was fired first). In any event, the Act does not limit "disciplinary actions" to dismissal proceedings. The investigation that preceded his dismissal is a "disciplinary action," and so is Mr. Bogosian's reinstatement under a remediation plan, which was mentioned in the February 1999 release. Of the four statements by board members that the defendants identify (Statement of Facts ¶ 90), only two refer specifically to reports in Mr. Bogosian's file or to conclusions of the Board. All of the statements, however, relate to the allegations of misconduct contained in Mr. Bogosian's personnel file. The defendants do not argue that the information came from any other source, so each of the four statements constitutes a separate violation of the Act. Because the defendants admit that

-17-

the Board never gave any written notice to Mr. Bogosian, I need not reach the question of whether the Board would have to give written notice for each individual statement or whether notice of the first disclosure would be sufficient for future disclosures.

The defendants' final argument is that the Board members should not be liable under the Act because Mr. Bogosian waived his right to notice under the Act by speaking to the press and parents about the investigation before the Board's press releases. The defendants try to apply waiver to Mr. Bogosian's statutory right to notice by analogy to certain common law privileges that protect confidential information. Privileges protect confidentiality and prevent information from being disclosed, with or without notice. The Act does not prevent disclosure *per se*; it requires only that the employee be given notice before his employer releases information or documents from his personnel file. Moreover, § 7(3) contains exceptions to the notice requirement where the disclosure is ordered in a legal action or requested by a government agency, or if "the employee has specifically waived written notice as part of a written, signed employment application with another employer." Section 7(3) requires that waiver of the right to notice be in writing, and "the enumeration of one thing in a statute implies the exclusion of all others." *Baker v. Miller*, 636 N.E.2d 551, 556 (Ill. 1994). Had the legislature meant to also allow waiver of the right to notice by disclosing information first, it would have said

so. Mr. Bogosian's motion for summary judgment is granted on his claim under the Act, and the defendants' motion is denied.

### B. 42 U.S.C. § 1983

Mr. Bogosian brings two due process claims against the Board, the Board members, Ms. Curley (the acting superintendent), and Ms. Young and Mr. Neubert (District employees) under 42 U.S.C. § 1983: deprivation of liberty (count I) and property (count II). The defendants argue that the claims against the individual defendants in counts I and II should be construed as "official capacity" claims. Mr. Bogosian does not respond to this argument, so I construe the § 1983 claims as "official capacity" claims. That means that they are claims against the governmental entity (in this case, the Board) rather than against the individual defendants, and that the constitutional injury must have been caused by some policy or custom of the entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

There are three ways in which a government entity's policy can violate an individual's civil rights: (1) an express policy; (2) a widespread practice that, though unwritten, is permanent and well settled as a custom or practice; and (3) an action by in individual with final policymaking authority. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Whether a particular person has "final policymaking authority" is a question of state law. *Duda v. Board of Ed. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998). In Illinois, the board of education is

-19-

granted the authority to employ and dismiss teachers. 105 ILCS 5/10-21.1, 10-22.4. These powers are discretionary and non-delegable. *Midwest Cent. Educ. Ass'n v. Illinois Educ. Labor Relations Bd.*, 660 N.E.2d 151, 155 (Ill. App. Ct. 1995). Therefore, the Board is a "final policymaking authority" for the purposes of decisions to hire and fire teachers. *See Haag v. Board. of Educ.*, 655 F. Supp. 1267, 1271-72 (N.D. Ill. 1987) (Roszkowski, J.).

To prevail on procedural due process claim under § 1983, Mr. Bogosian must show a deprivation of a constitutionally protected interest and that the deprivation was achieved by means of constitutionally insufficient procedures. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Mr. Bogosian claims that he was deprived of a liberty interest in his reputation when the Board issued the press releases about his investigation, and that he was deprived of a property interest when he was fired without the procedures required by state law. However, the lack of constitutionally insufficient procedures is the fatal shortcoming in both the liberty and property claims.

Mr. Bogosian argues that due process entitled him to all of the procedures for tenured teacher dismissal in 105 ILCS 5/24-12. He confuses the state law basis for his property right and the federal constitutional requirements of due process. *See Jones v. Board of Educ. of Township High Sch. Dist. No. 211, Cook County,*

-20-

651 F. Supp. 760, 766 (N.D. Ill. 1986) (Shadur, J.). Section 24-12 vests Mr. Bogosian with a property interest in his job, and it establishes certain state requirements for certain post-termination procedures, but it cannot add to the procedural requirements of the Due Process Clause -- these are much more limited. *See id.*

The Supreme Court has defined the minimal constitutionally acceptable procedures required before terminating a tenured public employee: "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). There is no dispute in this case about the pre-termination procedures offered to Mr. Bogosian: on June 24, 1998, the Board sent a letter notifying him that "charges of inappropriate conduct with female students" had been filed against him, and that the factual basis for the allegations would be presented to him at a meeting on June 30 when he would be given an opportunity to rebut or explain the charges. Mr. Bogosian appeared at the meeting on June 30 with his attorney and union representative, was told the factual basis of the charges, and he explained or denied them. This is all that due process requires.

Moreover, Mr. Bogosian cannot make out a claim for a deprivation of his liberty interest in his reputation. To make out a claim for a deprivation of a liberty interest, he must show that: (1) he was stigmatized by the Board's conduct (i.e., that the Board

defamed him); (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Strasburger v. Board of Educ., Hardin County Community Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998). He cannot prevail because he fails to raise a disputed issue of material fact with respect to the third requirement. He argues that he was unable to get other teaching jobs as a result of the Board's actions, but the only positions to which he can point that he applied for and did not get, he applied for in August and September. The Board's statements and press release in October cannot be the cause of his failure to obtain other teaching positions in prior months, so he cannot show that he suffered a deprivation of liberty because of the Board's actions.

The defendants argue that Mr. Bogosian cannot prevail under § 1983 on a theory of substantive due process, either. Mr. Bogosian claims that he was treated more harshly because he was male. Even if Mr. Bogosian could make out a prima facie case for an equal protection violation, discrimination based on sex is permissible if it is substantially related to an important government interest. *Boulahanis v. Board of Regents*, 198 F.3d 633, 639 (7th Cir. 1999). In this case, the Board has the authority to terminate a tenured teacher for "immorality" or "whenever, in [the Board's] opinion, the interests of the school require it." 105 ILCS 5/10-22.4. The

defendants admit that they never believed that Mr. Bogosian's conduct was "grounded in any sexual misconduct or need for sexual gratification," and that no parents had complained about his conduct prior to his dismissal, but it nevertheless concluded his behavior was "inappropriate, unprofessional, and inconsistent with the [School] District's philosophy of instruction in the primary grades." The Board's actions are substantially related to the important government interests of maintaining a safe school environment and protecting children from abuse. The defendants' motion for summary judgment is granted as to the due process claims (counts I and II).[5]

## C. Declaratory judgment

Mr. Bogosian seeks a declaration of his rights as a teacher in "contractual continued service" within the meaning of 105 ILCS 5/24-11, and a declaration that his October 14, 1998 resignation was defective and his withdrawal of it effective. Because I have already determined that he was terminated as of August 5, 1998, his resignation and subsequent withdrawal of it in October are ineffective, so his requests for a declaration of their effect are

_____

[5] Although I dismiss the § 1983 claims, I exercise my discretion to retain jurisdiction over the remaining state law claims under 28 U.S.C. § 1367. This case is well over a year old, discovery is closed, a trial date has been set, and the remaining claims do not implicate any difficult or unsettled issue of state law. Under these circumstances it is unnecessary to delay the resolution of this case by remanding it to state court. *See Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).

denied as moot. Likewise, his request for a declaration of his rights as a tenured teacher under § 24-11 is moot because the Board passed a resolution indicating that Mr. Bogosian was reinstated "as a certified employee with full tenure rights, seniority, back-pay . . . and applicable benefits" as of February 1, 1999.

Finally, Mr. Bogosian also asks for an order reinstating him as a first grade teacher at Wiesbrook Elementary School. The defendants argue that he is not covered by § 24-12 of the Illinois School Code, which entitles a teacher "who is reinstated by any hearing or adjudication brought under this Section [to] be assigned by the board to a position substantially similar to the one which the teacher held prior to that teacher's suspension or dismissal." The right to a substantially similar position, they say, is only available to teachers who are dismissed due to a reduction in force, not for cause, but they do not provide any authority for this proposition. The plain language of the statute says that it applies to "any hearing or adjudication" brought under § 24-12. Section 24-12 does not provide for an automatic post-termination hearing; the teacher must request a hearing in writing within 10 days after receiving notice of the charges. Mr. Bogosian did not request a post-termination hearing, but the Board failed to include a written bill of particulars in its notice, so its notice did not comply with the requirements of § 24-12. The Board cannot deny Mr. Bogosian's right to a substantially similar position upon

reinstatement because it failed to provide the proper procedures when they fired him.

Even though he has a right to be reinstated to a substantially similar position, Mr. Bogosian has no entitlement to any particular classroom assignment. *Valentine v. Joliet Township High Sch. Dist. No. 204*, 802 F.2d 981, 984 (7th Cir. 1986) (citing *Newby v. Board of Educ.*, 368 N.E.2d 1306, 1307 (Ill. App. Ct. 1977)) (§ 24-12 gives teachers property rights in position as certified employee of school district, but not to particular assignment or position within the district). Thus Mr. Bogosian has no entitlement to return to his former position as a first grade teacher at Wiesbrook School, so I construe his request to be one for reinstatement to a substantially similar position.

Of course, Mr. Bogosian may argue that a first grade position is the only position that would be substantially similar. In their statement of facts, they claim that Mr. Bogosian was offered a *third* grade teaching position, but that he turned it down because "he preferred to keep his job as a physical education teacher." Mr. Bogosian denies that he preferred to be a physical education teacher, but he does not address the alleged offer of a third grade classroom. In any event, Mr. Bogosian has submitted evidence that his background is specifically in early childhood development, not general elementary teaching. He has sufficiently raised a dispute as to whether the physical education position or a third grade

position is substantially similar to his former position as a first grade teacher. The defendants' motion for summary judgment on the declaratory judgment claim is granted as to Mr. Bogosian's request for a declaration of rights under 105 ILCS 5/24-11 and for a declaration of the validity of his resignation and its subsequent withdrawal. The motion is denied as to his request for an order for reinstatement to a substantially similar position.

## V. Conclusion

Mr. Bogosian's motion for summary judgment on count X of his claim is GRANTED. The defendants' motion is GRANTED with respect to counts I and II, DENIED with respect to counts III through VIII and count X, and GRANTED IN PART with respect to count IX.

ENTER ORDER:

*Elaine E. Bucklo*

_____

**Elaine E. Bucklo**
United States District Judge

Dated:   February 22, 2001